# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    vs.<br><br>DILANG DAT,<br><br>                Defendant. | 8:14CR409<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on remand from the U.S. Court of Appeals for the Eighth Circuit for an evidentiary hearing on Defendant Dilang Dat's claim of ineffective assistance of counsel under 28 U.S.C. § 2255. *See Dat v. United States*, 920 F.3d 1192 (8th Cir. 2019). An evidentiary hearing was held on September 12 and 13, 2019, and this Court makes the following findings and conclusions.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2014, Dat and three co-defendants were charged in a 17-count Indictment. The charges against Dat were Count XIII and Count XIV, both Hobbs Act Robberies in violation of 18 U.S.C. § 1951. He faced potential terms of incarceration of up to 20 years on each count.

Dat received court-appointed counsel on December 19, 2014. He was dissatisfied with his representation and sought appointment of new counsel. His request was granted on March 13, 2015, and a second attorney was appointed on March 16, 2015. Dat was dissatisfied with his second court-appointed counsel and was denied a third court-appointed counsel on April 8, 2015.

A Superseding Indictment was filed on December 8, 2015, adding Count XVIII as to Dat and certain co-defendants, for brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Dat faced a potential term of not less than

seven years and up to life imprisonment on Count XVIII, consecutive to any terms imposed on Counts XIII and XIV.

Dat continued to be dissatisfied with the performance of his second court-appointed counsel, and his request for a third court-appointed counsel was again denied on December 15, 2015. On December 18, 2015, the case was set for trial commencing March 14, 2016.

On March 4, 2016, attorney Kyle Allen entered her appearance as Dat's retained counsel, and his court-appointed counsel moved to withdraw. At a hearing before Magistrate Judge F.A. Gossett, III on March 9, 2016, Allen acknowledged that she was aware of the trial date and would be prepared to proceed. Accordingly, Judge Gossett granted court-appointed counsel's motion to withdraw.

On March 10, 2016, Dat gave notice of his request for a Rule 11 hearing. On March 14, 2016, he entered his plea of guilty to Count XIII of the Superseding Indictment and his Petition to Enter a Plea of Guilty and his Plea Agreement were filed. The Plea Agreement provided for a stipulated sentence of 78 months incarceration, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and a term of supervised release to be determined by the Court. In the Plea Agreement, the parties also stipulated that Dat participated in the robbery that was the subject of Count XIV and that his conduct in connection with that count would be considered for purposes of determining the applicable guideline range and restitution as if he had entered a plea of guilty to that count, although both Count XIV and Count XVIII would be dismissed at the time of sentencing.

On June 20, 2016, Dat was sentenced to a term of 78 months incarceration and three years of supervised release.[1] He was also ordered to pay restitution in the amount of $1,821.25, and a special assessment of $100.00. Judgment was entered on June 20, 2016.

On June 21, 2017, Dat filed a *pro se* Motion under 28 U.S.C. § 2255, raising three claims for relief, including a claim that his retained counsel was ineffective for failing to notify him that he would suffer deportation consequences as a result of his conviction: "Counsel was ineffective for failing to properly inform Mr. Dat that his guilty plea would result in deportation. Mr. Dat was under the mistaken impression that because he was in the United States legally as he was a lawful permanent resident, his immigration status would be secure." ECF No. 342 at Page ID #2300.

Dat's *pro se* Motion was denied without prejudice, because he was represented by attorney Allen who was actively involved in the proceedings. ECF No. 343. Allen then moved to withdraw; her motion was granted; and the Court deemed Dat's § 2255 Motion timely filed.

In the Court's Memorandum and Order considering the merits of Dat's § 2255 Motion, the Court summarily denied relief on all three claims. With respect to Dat's claim that his counsel was ineffective for failing to advise him of the immigration consequences of his plea, the Court stated:

> Dat's Plea Agreement, ECF No. 214, which he signed and dated on March 9, 2016, contains the following statement: "Defendant acknowledges that there are or may be collateral consequences to any conviction to include

---

[1] His total offense level under the U.S. Sentencing Guidelines for Count XIII was 23, and his Criminal History Category was IV, resulting in a sentencing range under the Guidelines of 70-87 months. His criminal history covered a four-year span from 2009 to 2013.

3

> but not limited to immigration . . . ." *Id*. at Page ID 679. Dat was asked the following question in his Petition to Enter a Plea of Guilty, ECF No. 213, Page ID 667: "Do you understand that . . . in most federal felony cases, if you are not a U.S. citizen your guilty plea will result in your permanent removal from the United States?" Dat marked the response, "Yes." He signed and dated the Petition on March 11, 2016. At the time of his plea, on March 14, 2016, he confirmed under penalty of perjury that all the answers in his Petition were truthful. He also stated, under oath, that he was aware of the fact that his conviction in this case could affect his immigration status. Accordingly, the Court finds Dat's first ground for relief to be without merit.

Memorandum and Order, ECF No. 354 at Page ID #2350.

The Court issued a Memorandum and Order denying Dat's § 2255 Motion, and a Judgment, on August 21, 2017. On September 15, 2017, Dat moved the Court to set aside its Judgment pursuant to Fed. R. Civ. P. 60(b)(6) and submitted an affidavit in which he stated that his retained counsel affirmatively told him he *would not* be deported as a result of his guilty plea. In his affidavit he also asserted that he was actually innocent of the charge to which he pled guilty. The Court denied Dat's motion to set aside the Judgment under Rule 60(b)(6), and Dat appealed. The Court of Appeals, relying on the assertions in Dat's post-Judgment affidavit, remanded the matter for an evidentiary hearing.

Pursuant to the remand, this Court held an evidentiary hearing on September 12 and 13, 2019. Dat was present and represented by new court-appointed counsel at the hearing.

**FINDINGS OF FACT**

Kyle Allen practiced criminal law in the state of Nebraska beginning in 2011, primarily in state court. She was associated with attorney Steve Lefler, who for forty years had specialized in criminal defense, including federal criminal practice.

4

On the last day of February or the first day of March 2016, Allen agreed to represent Dat for a retainer fee of $7,500, and an additional fee of $2,500 if the matter went to trial. Allen arranged for Lefler to co-chair the trial. Dat told Allen he was concerned about deportation, because of violence in his native country and because he had come to the United States at the age of two years. She told him the charges he faced were all "deportable offenses" and if he were convicted or entered a guilty plea he would face deportation proceedings. Allen told Dat she did not practice immigration law and she gave him the name of an immigration lawyer.

During the pretrial proceedings, Dat received, or believed he received, one or more oral or written offers of plea agreements, with language providing for stipulated removal, *i.e.*, stipulated deportation.[2] He rejected those offers or perceived offers.[3]

When Dat retained Allen, he told her he did not want her to file any motion to continue the trial, which was scheduled for March 14, 2016. On March 8, 2019, the Government offered a plea agreement that did not provide for stipulated removal, although it stated: "Defendant acknowledges that there are or may be collateral consequences to any conviction to include but not limited to immigration[.]". Ex. 102,

---

[2] Exhibit 101, received into evidence at the evidentiary hearing, is an email communication between Assistant U.S. Attorney Susan Lehr and Dat's second court-appointed counsel, David Eaton, dated February 14, 2016. In the email communication, Lehr inquires of Eaton whether Dat would be amenable to a plea agreement providing for a sentence of seven years incarceration, restitution, waiver of right to appeal, and stipulated removal. She also notes that Dat would face longer terms of incarceration, and would "be deported" if he were convicted following trial or if he pled without an agreement.

[3] At the hearing, Dat offered as Exhibit 103 an email communication from Lehr dated August 29, 2019, directed to Dat's current counsel in which Lehr lists the sentences his co-defendants received and Dat's likely guideline range if he were to proceed to trial on all counts. The Court sustained the Government's objection to Exhibit 103 based on relevance. At the end of the hearing, the Court stated that Dat's exhibits 101, 102, and 103 had been received. That statement was in error, as Exhibit 103 had not been received.

5

Plea Agreement, ECF No. 214 at Page ID #679. Dat told Allen he wanted to accept that offer and he would deal with the consequences regarding his immigration status. Allen suggested that Dat retain an immigration lawyer with the $2,500 he saved by not going to trial. At no time did Allen tell Dat he would not be deported. Allen did tell Dat that although deportation proceedings would occur, and she did not know when they would start, he should not be deported until after he served his sentence.

Allen reviewed the Plea Petition with Dat, including language stating that non-U.S. citizens would be permanently removed from the country if found guilty of most federal felony offenses. She explained to him that his case involved one of the felony offenses that would subject him to deportation.

At some time between March 9 and 14, 2016, Allen met with Dat's mother, Thokat Kouth, for the purpose of informing her of the terms of the Plea Agreement and to receive the fee. Dat's mother spoke a Sudanese dialect and conversed with Allen through an interpreter. Dat's mother gave Allen $2,500 more than what was owed. Allen counted the cash and returned $2,500 to Dat's mother and told her to use that money to hire an immigration lawyer for Dat. At no time did Allen tell Dat's mother that he would not be deported.

Dat's fiancée, Nyamal Both, initiated telephone conversations with Allen during Allen's representation of Dat. Dat's fiancée is an American citizen by birth and is of Sudanese descent. She had not met Dat at any time before or during the criminal proceedings and met him for the first time after he was incarcerated in the Bureau of Prison's facility at Leavenworth, following his sentencing. Allen does not recall giving Dat's fiancée any reassurances that Dat would not be deported.

At Dat's plea hearing on March 14, 2016, he was asked: "Do you understand that your conviction in this case could affect your immigration status?" He responded, under oath, "I'm aware of that." He was asked if he had discussed that matter with his lawyer, and he responded, "I have." He also stated, repeatedly and under oath, that no one had made any promises to him other than those contained in his Plea Agreement. He confirmed that he had read his Plea Petition and voluntarily answered each question in the Petition, and he confirmed under oath that his answers were truthful. Dat responded "Yes" to the following questions in his Plea Petition: "Do you understand that if you are not a United States citizen, that under immigration law, your guilty plea will be considered by immigration officials in determining whether you are deported, that is, removed from the United States? Do you understand that in nearly all cases involving drug trafficking and in most federal felony cases, if you are not a U.S. citizen your guilty plea will result in your permanent removal from the United States?"

Before Dat's sentencing hearing, Allen provided Dat with a copy of the Presentence Investigation Report and Sentencing Recommendation and reviewed all the language in the documents with Dat, including the portions that stated he would be subject to administrative removal.[4] Allen always referred to such removal as

---

[4] The Presentence Investigation Report, ECF No. 263, at Page ID #841, ¶ 86, states:

> "The defendant had contact with ICE regarding his status as a removable alien in July 2013; however, as verified with an agent with ICE, the Order of Removal was cancelled at that time. The agent advised that as a result of the instant conviction, the defendant will be subject to Administrative Removal from the United States. The agent advised that ICE will not lodge a detainer against the defendant, but rather will track him within the Bureau of Prisons and commence immigration proceedings upon his release from custody."

"deportation" in her conversations with Dat. Dat told Allen he had retained an immigration lawyer.

At Dat's sentencing hearing on June 20, 2016, Allen asked the Court to recommend Dat be placed in a correctional facility close to Omaha, Nebraska, so he could be near his immigration lawyer. She stated: "[H]e is going to have some immigration issues. As you may have read, he's from Kenya. His parents brought him here when he was two years old. So he's now dealing with additional immigration ramifications because of this case and his actions. Your Honor, in order for him to work with his local immigration attorney here, he has requested of me to make the request of you that he serve his time in Leavenworth, if possible." Sentencing Transcript, ECF No. 338, 5:17-6:1.

At the hearing on September 12 and 13, 2019, Dat, his mother, and his fiancée all testified that Allen assured them he *would not* be deported. The Court finds their testimony on that point not credible for the following reasons:

First, Allen testified that she told Dat all the charges against him were "deportable offenses" and he would be subject to deportation proceedings; she never told Dat that he *would not* be deported; she told Dat and his mother to use the $2,500 saved from the attorney fee to hire an immigration lawyer; and she did not recall giving Dat's fiancée

---

The Sentencing Recommendation, ECF No. 264, Page ID # 850, states: "As confirmed with immigration officials, deportation proceedings will likely commence against the defendant after his release from custody." It also states: "Given the defendant's immigration issues, it is recommended he comply with the rules and regulations with immigration officials." At Page ID #853 it states: "The defendant shall comply with all rules and regulations of the Bureau of Immigration Customs Enforcement and, if deported, shall not reenter the United States or reside therein without the express, written permission of the Secretary of the United States Department of Homeland Security."

any reassurance that he would not be deported. The Court finds Allen to be a credible witness. Her responses to questions were forthright and were consistent with other evidence in the record such as the Plea Petition, Plea Agreement, plea colloquy, Presentence Investigation Report, Sentencing Recommendation, and her statements at the sentencing hearing.

Second, Dat's testimony at the hearing was evasive[5], and conflicted with his prior sworn statements in his Plea Petition, plea colloquy, and original § 2255 Motion[6]. His

---

[5] For example, on cross-examination, the Government's counsel asked the following questions and Dat gave the following responses:

Q. Ms. Allen talked to you about the legal fee and that it was going to be $7500. Isn't that correct?

A. When we discussed any payment arrangements, the contract was for trial.

Q. So she was only going to get paid if she went to trial?

A. We contracted for a trial. Payments were for the trial.

Q. Again so she was only going to get paid if she went to trial?

A. I don't understand the question, I just . . . What are you asking?

Q. Your case didn't go to trial. So is it your testimony that she didn't get paid?

A. She got paid. She returned funds, but we paid her for a trial.

Q. But you didn't have a trial.

A. We did not.

Q. So why did you pay her?

A. Because she negotiated a plea that excluded deportation language or provisions. And that is the only reason I accepted that offer. Rather than risk being deported at a trial, I took the deal that had no deportation.

Q. The only deal before this court is the plea agreement that's part of the record.

A. Every plea agreement that include or entailed any type of deportation was rejected. The only one that was accepted was the one that did not include that deportation language or provision.

9

earlier sworn statements in this case are also directly contradictory, demonstrating a general lack of credibility.[7]

Third, Dat, his mother, and his fiancée have a motive to help him vacate his plea, to stay his deportation proceedings. The fact that Dat may face substantial hardship or danger if deported to South Sudan creates a powerful motive for him, his mother, and his fiancée to attempt to vacate the plea.

Finally, Dat's conduct during pretrial proceedings demonstrated that he is an intelligent man, with extensive experience in the criminal justice system, who was determined to direct his attorneys' actions and to make his own strategic decisions regarding the handling of his case. If his plea is vacated now, more than five years after the events leading to the charges, he may enjoy a strategic trial advantage not available when the case was originally set for trial.

**STANDARD**

---

Q. It was silent as to deportation. It didn't say you wouldn't be deported. Isn't that correct?

A. That's what I'm disputing.

. . . .

Q. Was there anything in the plea agreement that talked about deportation?

A. That's a second question. Could you rephrase all of the questions again?

[6] In his original 11-page § 2255 Motion and 12-page Brief, both at ECF 342, Dat made no reference to any assurances from Allen that he *would not* be deported. Instead he referenced his "impression" and "mistaken belief" as to the deportation consequences of his plea. *Id.* at Page ID #2289, 2299, 2300.

[7] In Dat's Plea Petition, ECF No. 213, which he confirmed under oath at his plea hearing, he stated: "I robbed Game Stop on July 16, 14." In his Affidavit of September 20, 2017, ECF No. 362 at Page ID 2387, he stated: "I am innocent of the charge I was convicted of. I was not a participant in the robbery."

In order to establish ineffective assistance of counsel, Dat must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong requires a showing that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that counsel failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of counsel prejudiced the defense. *Id.* at 687.

## DISCUSSION

In *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010), the Supreme Court stated: "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." Because Padilla's counsel wrongly informed him that his plea *would not* result in deportation, the Court concluded that Padilla satisfied the first prong of the *Strickland* test—deficient performance of counsel. *Id.*

In *Lee v. United States*, 137 S. Ct. 1958 (2017), defense counsel also wrongly assured his client—Lee—that he *would not* be deported if he entered a plea of guilty. At his § 2255 hearing, both Lee and his former attorney testified that the attorney wrongfully advised Lee that he *would not* be deported following a plea, and that Lee would have gone to trial if he had understood the deportation consequences of a plea, despite strong evidence of his guilt. *Id.* at 1963. Accordingly, the Supreme Court held that Lee satisfied the second *Strickland* prong by demonstrating a reasonable probability that, but for his attorney's error, he would have insisted on going to trial despite "grim" prospects for acquittal. *Id.* at 1965.

In *United States v. Ramirez-Jimenez*, 907 F.3d 1091 (8th Cir. 2018), the defendant raised a claim of ineffective assistance of counsel on direct appeal, arguing that his lawyer should have advised him of the *certainty* of deportation before he entered a plea of guilty. Defense counsel and the district court had both advised the defendant that he "may" be deported after serving his prison sentence, and that he was "not likely to gain relief in Immigration court." *Id.* at 1093. The Eighth Circuit rejected Ramirez-Jimenez's argument, stating:

> In *Padilla*, the Supreme Court held that plea counsel's performance was deficient for failing to advise Padilla that his conviction would make him "deportable" . . . if he pleaded guilty, not that deportation or removal was either mandatory or certain. In many removal proceedings, the alien concedes he is removable (deportable) and seeks relief from removal by providing evidence that he is eligible for asylum, withholding of removal, or relief under the Convention Against Torture. These immigration law complexities should caution any criminal defense attorney not to advise a defendant considering whether to plead guilty that the result of a post-conviction, contested removal proceeding is clear and certain.

*Id.* at 1094. The Eighth Circuit also noted the defendant's prior experience dealing with immigration officials, when concluding he had not shown his plea was caused by ineffective assistance of counsel.

Here, Allen cannot be faulted for failing to tell Dat that his deportation to South Sudan was clear and certain. She provided effective assistance by informing him that all the charges against him were deportable offenses; that he would be subject to deportation proceedings if he entered a plea of guilty to any of the offenses; and that he should retain the help of a lawyer who specialized in immigration law to assist him with the immigration consequences of his case.

Because the Court finds that Allen provided effective assistance to Dat by informing him that he would be subject to deportation proceedings due to his plea of

guilty, and at no time assured him he *would not* be deported, the Court concludes that Dat has failed to satisfy either prong of the *Strickland* test.

## CONCLUSION

The Court concludes that Dat's retained counsel, Kyle Allen, never told Dat that he *would not* be deported, and never led him to believe that he would not be subject to deportation proceedings except for the duration of his incarceration. To the contrary, Allen told Dat that his charges were deportable offenses; he would be subject to deportation proceedings; and he needed to retain an immigration attorney.

Dat has not satisfied either the performance prong or the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). He has failed to demonstrate that his counsel performed outside the wide range of reasonable professional assistance and made errors so serious that counsel failed to function as the kind of counsel guaranteed by the Sixth Amendment. He has also failed to demonstrate that counsel's performance prejudiced his defense.

A petitioner under § 2255 may not appeal an adverse ruling unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability will not be granted unless the movant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To show this denial, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Based on credibility determinations, the Court finds that Dat did not satisfy either prong of the *Strickland* standard. Reasonable jurists may find these credibility

13

determinations debatable. On this ground, the Court will issue a certificate of appealability.

IT IS ORDERED:

1. Following an evidentiary hearing after remand, the Defendant Dilang Dat's Motion under 28 U.S.C. § 2255, ECF No. 342, is again denied;

2. Because the Court's conclusion is based on credibility findings, a certificate of appealability will be issued; and

3. A separate Judgment will be entered.

Dated this 24th day of October, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge